**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| T.A.N., an individual, on behalf of herself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | **CLASS ACTION COMPLAINT** |
| PNI DIGITAL MEDIA, INC., | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, on behalf of herself and all others similarly situated, alleges:

## NATURE OF THE CASE

1.     Between approximately June 2014 and July 2015, Defendant PNI Digital Media, Inc. ("PNI") was subject to a data breach (the "PNI data breach"), when hackers stole the personal financial information of numerous individuals whose information was included in PNI's electronic records.  The personal and financial information obtained by the hackers includes name, telephone number, mailing address, email address, username, hashed password, and credit card information (including card number, expiration date, and verification code).  Such information will allow criminals to create fraudulent credit or debit accounts for

the purchasing of goods or the withdrawal of money.  There was absolutely no reason for those who perpetrated the data breach to undertake such an effort other than to illegally profit.  Thus, there can be no doubt that the personal information taken in the PNI data breach has been sold or made available for sale.

2.     PNI's conduct – failing to take adequate and reasonable measures to ensure its data systems were protected, failing to take available steps to prevent and stop the breach from ever happening, failing to disclose to its customers the material facts that it did not have adequate computer systems and security practices to safeguard customers' personal information, failing to recognize that a breach had occurred for months, and failing to provide timely and adequate notice of the PNI data breach – has caused substantial consumer harm and injuries to consumers across the United States.

3.     As a result of the PNI data breach, numerous individuals whose personal information was in PNI electronic records have been exposed to fraud and these individuals have been harmed.  The injuries suffered by the proposed Class as a direct result of the PNI data breach include: time and effort spent dealing with the fallout of the data breach; costs of dealing with the data breach; theft of their personal information; costs associated with the detection and prevention of identity theft and medical identity theft and unauthorized use of their personal information;

costs associated with attempts to ameliorate, mitigate, and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance, and annoyance of dealing with all issues resulting from the PNI data breach; the imminent and certainly impending injury flowing from potential fraud and identify theft posed by their personal information being placed in the hands of hackers; damages to and diminution in value of their personal information entrusted to PNI for the sole purpose of maintaining electronic records and with the mutual understanding that PNI would safeguard Plaintiff's and Class members' data against theft and not allow access and misuse of their data by others; and continued risk to their personal information, which remains in the possession of PNI and which is subject to further breaches so long as PNI fails to undertake appropriate and adequate measures to protect Plaintiff's and Class members' data in its possession.

4.     Plaintiff seeks to remedy these harms, and prevent their future occurrence, on behalf of herself and all similarly situated individuals whose personal information was stolen as a result of the PNI data breach.  Plaintiff asserts claims against PNI for violations of Georgia's data breach statute, negligence,

3

breach contract and breach of implied contract, bailment, and unjust enrichment. On behalf of herself and all similarly situated consumers, Plaintiff seeks to recover damages, including actual and statutory damages, and equitable relief, restitution, disgorgement, costs, and reasonable attorney fees.

## PARTIES

5.     Plaintiff Tamara A. Nedlouf (listed by initials in the caption to reduce her risk of further harm) is domiciled in Georgia and is a citizen of the State of Georgia.   Ms. Nedlouf received an email from CVS Photo Customer Care informing her that her personal information was compromised as a result of the PNI data breach.   Ms. Nedlouf was harmed by having her personal information compromised.   She has already spent significant time and worry devoted to the problem.

6.     Plaintiff would not have given, or not allowed PNI to be given, her personal information had PNI told her that it lacked adequate computer systems and data security practices to safeguard customers' personal information from theft, and had PNI provided her with timely and accurate notice of the PNI data breach.

7.     Plaintiff has suffered actual injury from having her personal information compromised and stolen in and as a result of the PNI data breach.

4

8.     Defendant PNI is a corporation organized and existing under the laws of the Canadian province of British Columbia, with its principal place of business and headquarters in Vancouver, British Columbia.  PNI is a software developer that provides software platforms targeted to businesses who offer photo services to consumers.

## JURISDICTION AND VENUE

9.     This Court has diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the class members are citizens of a state other than Defendant's state or country of citizenship, which is Canada.  This Court may also exercise supplemental jurisdiction over the state law claim pled below.

10.    This Court has personal jurisdiction over PNI because it regularly conducts business in Georgia, and has sufficient minimum contacts in Georgia.

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because PNI regularly transacts business here; and some of the Class members reside in this District.  The causes of action for the putative Class members also arose, in part, in this District.

**FACTS**

12.    PNI provides a proprietary transactional software platform that is used by several leading retailers such as Costco, CVS Pharmacy, and Rite Aid to sell personalized photo services and products to consumers.

13.    PNI's digital software connects these retailers' websites, in-store kiosks, and mobile platforms so that consumers are presented with a uniform storefront at a retailer's photo center service.

14.    Historically, PNI's software platform has been used in over 19,000 retail locations and 8,000 kiosks, where consumers made over 18 million transactions for personalized photo products.

15.    Plaintiff has utilized PNI's software platform through CVS Pharmacy, where Ms. Nedlouf created an account on CVSPhoto.com for her digital photo needs.

16.    Ms. Nedlouf either established a contractual relationship with PNI or is a third-party beneficiary of PNI's contractual relationship with CVS.

17.    In connection with her CVSPhoto.com account, Ms. Nedlouf provided PNI with sensitive personal and/or financial information such as her first and last name, payment card number, expiration date, card verification code, address,

6

phone number, email address, and username and password for logging into her CVSPhoto.com account.

18.    When Ms. Nedlouf provided PNI with this sensitive personal and financial information, she reasonably believed PNI would maintain this personal and financial information in a secure manner and provided her information to PNI on that basis.

19.    Had Ms. Nedlouf known that PNI would not maintain her information in a reasonably secure manner, she would not have provided that information to PNI.

20.    On September 11, 2015, CVS Photo Customer Care sent Ms. Nedlouf an email with the subject line: "CVS Photo Security Incident Update."

21.    The email received by Ms. Nedlouf included the following information:

> In July 2015, CVS Pharmacy, Inc. ("CVS") learned of reports of unusual activity involving payment cards used on the CVSPhoto.com website, which is managed and hosted by an independent vendor, PNI Digital Media ("PNI"). We promptly took down the website, and began working with PNI to investigate the reports. We continue to actively investigate the matter, working with PNI and experienced forensic investigators.

> On August 13, 2015, investigators informed CVS that, between June 2014 and July 2015, there was an illegal intrusion into PNI's systems that host the CVSPhoto.com website. This intrusion potentially resulted in the unauthorized acquisition of data entered by certain

7

users on CVSPhoto.com. Based on the facts known to the company at this time, the potentially affected personal information may have included your first and last name, payment card number, expiration date, card verification code, address, phone number, email address, and username and password for logging in to a CVSPhoto.com account. Importantly, at this time, there is no indication that the potentially affected information included pin numbers or photographic images.

We want to assure our customers that the CVSPhoto.com website is completely separate from CVS.com and our pharmacies. The incident occurred only within PNI's network. The incident did not impact financial transactions on CVS.com or in-store.

22.    Ms. Nedlouf's personal and financial information was compromised in and as a result of the PNI data breach.

23.    Ms. Nedlouf was harmed by having her financial and personal information compromised and faces the imminent threat of future additional harm from the increased risk of identity theft and fraud due to her financial and/or personal information being sold on the Internet black market and/or misused by criminals. For example, Plaintiff has already spent a significant amount of her valuable time in dealing with the fallout of the data breach.

## CLASS ACTION ALLEGATIONS

24.    Plaintiff brings all claims as class claims under Federal Rule of Civil Procedure 23. The requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) are met with respect to the Class defined below.

25.    The Plaintiff Class consists of all United States citizens whose personal information was compromised by the PNI data breach.

26.    Excluded from the Class is PNI, including any entity in which PNI has a controlling interest or is a parent or subsidiary, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of PNI.  Also excluded are the judges and court personnel in this case and any members of their immediate families.

27.    **Numerosity.**  The Class is so numerous that joinder of all members is impracticable.  The Class includes thousands, possibly hundreds of thousands, of individuals whose personal information was compromised by the PNI data breach.

28.    **Commonality.**    There are numerous questions of law and fact common to Plaintiff and the Class, including the following:

- whether PNI engaged in the wrongful conduct alleged herein;

- whether PNI's conduct was deceptive, unfair, unconscionable and/or unlawful;

- whether PNI owed a duty to Plaintiff and members of the Class to adequately protect their personal information and to provide timely and accurate notice of the PNI data breach to Plaintiff and members of the Class;

9

- whether PNI breached its duties to protect the personal information of Plaintiff and members of the Class by failing to provide adequate data security and whether PNI breached its duty to provide timely and accurate notice to Plaintiff and members of the Class;

- whether PNI knew or should have known that its computer systems were vulnerable to attack;

- whether PNI's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the personal information;

- whether PNI unlawfully failed to inform Plaintiff and members of the Class that it did not maintain computers and security practices adequate to reasonably safeguard personal information and whether PNI failed to inform Plaintiff and members of the Class of the data breach in a timely and accurate manner;

- whether Plaintiff and members of the Class suffered injury, including ascertainable losses, as a result of PNI's conduct (or failure to act);

- whether Plaintiff and members of the Class are entitled to recover damages; and

- whether Plaintiff and Class members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or other equitable relief.

29.    **Typicality**.  Plaintiff's claims are typical of the claims of the Class in that she, like all Class members, had her personal information compromised in the PNI data breach.

30.    **Adequacy**.  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained counsel who are experienced in class-action and complex litigation.  Plaintiff has no interests that are adverse to, or in conflict with, other members of the Class.

31.    The questions of law and fact common to the Class members predominate over any questions which may affect only individual members.

32.    **Superiority**.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation.  Moreover, absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy.

33.   A class action is an appropriate method for the fair and efficient adjudication of this controversy.  There is no special interest in the members of the Class individually controlling the prosecution of separate actions.  The loss of money and other harm sustained by many individual Class members will not be large enough to justify individual actions, especially in proportion to the significant costs and expenses necessary to prosecute this action.  The expense and burden of individual litigation makes it impossible for many members of the Class individually to address the wrongs done to them.  Class treatment will permit the adjudication of claims of Class members who could not afford individually to litigate their claims against Defendant.  Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single form simultaneously, efficiently, and without duplication of effort and expense that numerous individual actions would entail.   No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

34.   Class certification, therefore, is appropriate under Federal Rules 23(a) and (b)(3).  The above common questions of law or fact predominate over any

questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

35.    The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for PNI.  In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

## COUNT I – NEGLIGENCE

36.    Plaintiff incorporates by reference those paragraphs set out above as if fully set forth herein.

37.    PNI owed a duty to Plaintiff and members of the Class to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their personal information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.  This duty included, among other things, designing, maintaining, and testing PNI's security systems to ensure that Plaintiff's and Class members' personal information in PNI's possession was adequately secured and protected.  PNI further owed a duty to

Plaintiff and Class members to implement processes that would detect a breach of its security system in a timely manner and to timely act upon warnings and alerts.

38.    PNI owed a duty, as articulated in its own policies, to protect its customers' personal information.

39.    PNI owed a duty to timely disclose the material fact that PNI's computer systems and data security practices were inadequate to safeguard individuals' personal information.

40.    PNI breached these duties by the conduct alleged herein by (a) failing to protect its customers' personal information; (b) failing to maintain adequate computer systems and data security practices to safeguard customers' personal information; (c) failing to disclose the material fact that PNI's computer systems and data security practices were inadequate to safeguard customers' personal information; and (d) failing to disclose in a timely and accurate manner to Plaintiff and members of the Class the material fact of the PNI data breach.

41.    The conduct alleged herein caused Plaintiff and Class members to be exposed to fraud and be harmed.  The injuries suffered by Plaintiff and the proposed Class as a direct result of the PNI data breach include: time, trouble, and anxiety expended only as a result of the data breach; theft of their personal information; costs associated with the detection and prevention of identity theft and

medical identity theft and unauthorized use of their financial accounts and medical identity; costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the data breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance and annoyance of dealing with all issues resulting from the PNI data breach; the imminent and certainly impending injury flowing from potential fraud and identify theft posed by their personal information being placed in the hands of hackers; damages to and diminution in value of their personal information entrusted to PNI with the mutual understanding that PNI would safeguard Plaintiff's and Class members' data against theft and not allow access and misuse of their data by others; and continued risk to their personal information, which remains in the possession of PNI and which is subject to further breaches so long as PNI fails to undertake appropriate and adequate measures to protect Plaintiff's and Class members' data in its possession.

## COUNT II – BREACH OF IMPLIED CONTRACT

42. Plaintiff incorporates by reference those paragraphs set out above as if fully set forth herein.

43.     When Plaintiff and members of the Class provided their personal information to PNI, Plaintiff and members of the Class entered into implied contracts with PNI pursuant to which PNI agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class members that their data had been breached and compromised.

44.     Plaintiff and Class members would not have provided and entrusted their personal information to PNI in the absence of the implied contract between them and PNI.

45.     Plaintiff and members of the Class fully performed their obligations under the implied contracts with PNI.

46.     PNI breached the implied contracts it made with Plaintiff and Class members by failing to safeguard and protect the personal information of Plaintiff and members of the Class and by failing to provide timely and accurate notice to them that their personal information was compromised in and as a result of PNI data breach.

47.     The losses and damages sustained by Plaintiff and Class members as described herein were the direct and proximate result of PNI's breaches of the implied contracts between PNI and Plaintiff and members of the Class.

## COUNT III – BREACH OF CONTRACT

48.     Plaintiff incorporates by reference those paragraphs set out above as if fully set forth herein.

49.     PNI has a contractual obligation to maintain the security of its customers' personal information.

50.     PNI breached that contractual obligation by failing to safeguard and protect the personal information of Plaintiff and members of the Class and by failing to provide timely and accurate notice to them that their personal information was compromised as a result of PNI data breach.

51.     The losses and damages sustained by Plaintiff and Class members as described herein were either the direct and proximate result of PNI's breaches of the contracts between PNI and Plaintiff and members of the Class or the direct and proximate result of PNI's breaches of its contract(s) with CVS or other non-parties, of which Plaintiff and the Class are third-party beneficiaries.

## COUNT IV – BAILMENT

52.     Plaintiff incorporates by reference those paragraphs set out above as if fully set forth herein.

53.     In having their personal information delivered to PNI for the purposes of photo services, Plaintiff and Class members intended and understood that PNI would adequately safeguard their personal and financial information.

54.     PNI accepted possession of Plaintiff's and Class members' personal information for the purpose of providing photo services.

55.     By accepting possession of Plaintiff's and Class members' personal information, PNI understood that Plaintiff and Class members expected PNI to adequately safeguard their personal information.   Accordingly, a bailment (or deposit) was established for the mutual benefit of the parties.

56.     During the bailment (or deposit), PNI owed a duty to Plaintiff and Class members to exercise reasonable care, diligence, and prudence in protecting their personal information.

57.     PNI breached its duty of care by failing to take appropriate measures to safeguard and protect Plaintiff's and Class members' personal information, resulting in the unlawful and unauthorized access to and misuse of Plaintiff's and Class members' personal information.

58.     PNI further breached its duty to safeguard Plaintiff's and Class members' personal information by failing to timely and accurately notify them that their information had been compromised as a result of the PNI data breach.

## COUNT V – VIOLATION OF GEORGIA DATA BREACH STATUTE

59.    Plaintiff incorporates by reference those paragraphs set out above as if fully set forth herein.

60.    The Georgia Legislature has enacted a data breach statute.   See O.C.G.A. § 10-1-910, *et seq*.  This statute generally requires that any person or business conducting business within the state that engages in whole or in part in the business of collecting, assembling, evaluating, compiling, reporting, transmitting, transferring, or communicating information concerning individuals for the primary purpose of furnishing personal information to nonaffiliated third parties, shall disclose any breach of the security of the system to any resident of the state whose personal information was acquired by an unauthorized person, and further require that the disclosure of the breach be made in the most expedient time possible and without unreasonable delay.

61.    The PNI data breach constitutes a breach of the security system of PNI within the meaning of O.C.G.A. § 10-1-910, *et seq*. and the data breached is covered by the Georgia data breach statute.

62.    Plaintiff's and Class (or suitable Subclass) members' names, email addresses, and street addresses constitute personal information under and subject to the Georgia data breach statute.

63.     PNI unreasonably delayed in informing the public, including Plaintiff and members of the Class (or suitable Subclass) about the breach of security of Plaintiff's and Class (or suitable Subclass) members' confidential and non-public personal information after PNI knew or should have known that the data breach had occurred.

64.     PNI failed to disclose to Plaintiff and the Class (or suitable Subclass) without unreasonable delay and in the most expedient time possible, the breach of security of Plaintiff's and Class (or suitable Subclass) members' personal and financial information when PNI knew or reasonably believed such information had been compromised.

65.     Plaintiff and members of the Class (or suitable Subclass) suffered harm directly resulting from PNI's failure to provide and the delay in providing Plaintiff and Class (or suitable Subclass) members with timely and accurate notice as required by the Georgia data breach statute.

66.     Plaintiff suffered the damages alleged above as a direct result of PNI's delay in providing timely and accurate notice of the data breach.

67.     Had PNI provided timely and accurate notice of the data breach, Plaintiff and Class (or suitable Subclass) members would have been able to avoid

and/or attempt to ameliorate or mitigate the damages and harm resulting in the unreasonable delay by PNI in providing notice.

68.   PNI's failure to provide timely and accurate notice of the data breach violated the Georgia data breach statute.

69.   Plaintiff and members of the Class seek all remedies available under the Georgia data breach statute.

## COUNT VI – UNJUST ENRICHMENT

70.   Plaintiff incorporates by reference those paragraphs set out above as if fully set forth herein.

71.   This count is brought in the alternative to Plaintiff's breach of contract counts.  If claims for breach of contract are ultimately successful, this count will be dismissed.

72.   Plaintiff and Class members conferred a benefit on PNI by way of customers' paying PNI to maintain Plaintiff and Class members' personal information.

73.   The monies paid to PNI were supposed to be used by PNI, in part, to pay for the administrative and other costs of providing reasonable data security and protection to Plaintiff and Class members.

74.     PNI failed to provide reasonable security, safeguards, and protections to the personal information of Plaintiff and Class members, and as a result PNI was overpaid.

75.     Under principles of equity and good conscience, PNI should not be permitted to retain the money because PNI failed to provide adequate safeguards and security measures to protect Plaintiff's and Class members' personal information that they paid for but did not receive.

76.     PNI wrongfully accepted and retained these benefits to the detriment of Plaintiff and Class members.

77.     PNI's enrichment at the expense of Plaintiff and Class members is and was unjust.

78.     As a result of PNI's wrongful conduct, as alleged above, Plaintiff and the Class are entitled to restitution and disgorgement of profits, benefits, and other compensation obtained by PNI, plus attorneys' fees, costs, and interest thereon.

## <u>RELIEF REQUESTED</u>

Plaintiff, on behalf of herself and all others similarly situated, requests that the Court enter judgment against PNI, as follows:

1.     Certifying this case as a class action pursuant to Federal Rules 23(a) and (b)(3), and, pursuant to Federal Rule 23(g), appointing the named

Plaintiff to be a Class representative and her undersigned counsel to be Class counsel;

2.     Requiring Defendant to pay for notifying the Class of the pendency of this action;

3.     Requiring Defendant to make whole any losses suffered by Plaintiff and Class members;

4.     Awarding to Plaintiff and the Class of compensatory, direct, consequential, statutory, and incidental damages;

5.     Awarding attorneys' fees, costs, and expenses, as provided by law, or equity, or as otherwise available;

6.     Awarding pre-judgment and post-judgment interest, as provided by law or equity; and

7.     Such other or further relief as may be appropriate under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury of any and all issues so triable.

23

DATED this 15th day of September, 2015.

                       Respectfully submitted,

BY:   _/s/ E. Adam Webb_____
       E. Adam Webb
        Georgia Bar No. 743910
       G. Franklin Lemond, Jr.
        Georgia Bar No. 141315

       WEBB, KLASE & LEMOND, LLC
       1900 The Exchange, SE
       Suite 480
       Atlanta, Georgia 30339
       (770) 444-9325
       (770) 217-9950 (fax)
       Adam@WebbLLC.com
       Franklin@WebbLLC.com

       *Counsel for Plaintiff and the*
       *Proposed Class*

24